UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELLIOTT DEMOND SHEFFIELD,

      Petitioner,

v.                           Case No. 3:23-cv-30-HES-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.

_____/

## ORDER

### I. Status

Petitioner Elliott Demond Sheffield, an inmate of the Florida penal system, initiated this action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). Sheffield challenges a 2016 state court (Duval County, Florida) judgment of conviction for aggravated assault, assault, battery, and possession of a firearm by a convicted felon. He is serving a twenty-year term of incarceration. Respondent has submitted a Response (Response; Dkt. 5) with exhibits (Resp. Exs. 1-27; Docs. 5-1 through 5-27). Petitioner filed a Reply (Reply; Dkt. 9). This action is ripe for review.

### II. Governing Legal Principles

#### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. *See Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Id.* (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" *Id.* (quoting *Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

2

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. *Id.* at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies

3

the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." *See Burt v. Titlow*, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); *accord Brumfield v. Cain*, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at ---, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

*Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

4

state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (quoting *Richter*, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. *Richter*, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. *See* 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the

5

> "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. *Duncan, supra*, at 365–366, 115 S. Ct. 887; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default that raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See, e.g., Coleman,*[1] *supra*, at 747–748, 111 S. Ct. 2546; *Sykes,*[2] *supra*, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural

---

[1] *Coleman v. Thompson*, 501 U.S. 722 (1991).

[2] *Wainwright v. Sykes*, 433 U.S. 72 (1977).

6

> rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g., Walker v. Martin*, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); *Beard v. Kindler*, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 501 U.S., at 750, 111 S. Ct. 2546.

*Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting *Carrier*, 477 U.S. at 488, 106 S. Ct. 2639).[3] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *Id.* at 1261 (quoting *Carrier*, 477 U.S. at 494, 106 S. Ct. 2639).

---

[3] *Murray v. Carrier*, 477 U.S. 478 (1986).

*Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Carrier*, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

*Ward*, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324). With the rarity of such evidence, in most cases,

8

allegations of actual innocence are ultimately summarily rejected. *Schlup*, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland*,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.*, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a

> trial whose result is reliable." *Id.*, at 687, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the *Strickland* test before the other." *Ward*, 592 F.3d at 1163. Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Id.* (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in *Strickland*: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)

(quotation marks omitted). If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*, 562 U.S. at ---, 131 S. Ct. at 788.

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

### III. Relevant Factual and Procedural History

The State of Florida charged Petitioner by Second Amended Information with second-degree attempted murder (count one), aggravated assault (count two), shooting or throwing deadly missiles (count three), battery (count four), and possession of a firearm by a convicted felon (count five). Resp. Ex. 5 at 1-4. Petitioner continued to trial. The trial court, in its order denying Petitioner's Rule 3.850 motion, summarized the trial testimony:

> Joseph Hines, age 42 at the time of the Defendant's trial, knew the Defendant since childhood. From August 2015 until January 2016, Hines was in a dating relationship with Emalekia Bradford. Bradford is the mother of the Defendant's

11

two daughters: Emily and Ebony. During Hines and Bradford's relationship, Bradford lived in an apartment in Jacksonville. Hines did not reside at the apartment full-time, but on occasion, would stay there overnight with Bradford. (Ex. G at 405-10.)

On September 16, 2015, Hines was at Bradford's apartment with Bradford and Emily. He was in the bedroom when Emily entered to play a voicemail from the Defendant. In the voicemail, the Defendant said that he had "been watching" and that "it's going down." The State published the voicemail to the jury. (Ex. G at 410-19.)

Emily was "nervous" and "kind of scared," so Hines and Bradford tried to calm her. As they did so, Hines heard a "hissing sound" emanating from the parking lot. Through the window, he saw the Defendant walking around Bradford's car. Hines went outside to confront the Defendant. As Hines approached, the Defendant brandished a gun and ordered Hines to "backup." The Defendant pointed the gun at Hines's face, brushed the gun against Hines' cheek, and threatened to kill Hines. (Ex. G at 411-12, 420-23.)

The Defendant told Hines that he should remove his belongings from Bradford's apartment. Hines walked back to the apartment as the Defendant continued to hold the gun and make statements about Hines' departure. As Hines ascended the stairs to the apartment, Bradford came outside to ask where the Defendant was located. The Defendant grabbed Bradford and pushed her against the wall on the landing. Bradford begged the Defendant to stop. The apartment door remained open. As the Defendant and Bradford struggled, the Defendant's gun fired, and the bullet struck the inside ceiling. After the gun discharged, Hines was able to close the apartment door and call 911. (Ex. G at 426-30.)

12

After he called 911, Hines told the Defendant that he was on the phone with police. Hines saw the Defendant hold Bradford by the throat and place his gun to her temple. The Defendant stated that he should kill Bradford because she was in a sexual relationship with Hines. Once the Defendant heard Hines say that he called 911, he "[t]ook off running down the steps." The Defendant left his cell phone at the scene. At trial, the State published a recording of Hines' 911 call. (Ex. G at 430-43.)

Bradford testified that she and the Defendant had been in an "off and on" dating relationship for more than twenty years. Their relationship ended in April 2015, and she began dating Hines in August 2015. On September 16, 2015, she and Hines were "dozing off" in the bedroom when Emily entered acting "hysterical and scared." Along with Hines, Bradford listened to the voicemail that the Defendant left on Emily's phone. Braford assured her daughter that the Defendant was "just talking. (Ex. G at 488-95.)

Thereafter, Bradford heard the hissing sound from the parking lot. Through the window, she saw the Defendant walking away from her car (at trial, the State produced a photograph showing Bradford's car with flattened tires). Hines went outside. About five or ten minutes later, Bradford went outside and asked Hines where the Defendant was located. Hines responded that he was "right behind me with a gun on me." The Defendant began swearing at Bradford because of her relationship with Hines. The Defendant pointed his gun at Bradford's temple. Bradford was scared. The Defendant attempted to enter the apartment, but he was unable to do so. After hearing the "pop" of the Defendant's gun discharging, Bradford warned the Defendant that Hines was calling the police. The Defendant fled from the scene. (Ex. G at 495-505.)

13

> Officer Douglas Hilaman of the Jacksonville Sheriff's Office responded to the scene at approximately 1:30 AM. He spoke with Bradford and Hines, both of whom were upset. Bradford had a scratch on her neck and her car had slashed tires on the driver's side. There was a shell casing on the floor just inside the apartment, as well as what appeared to be a bullet hole in the ceiling. Officer Hilaman obtained and executed a warrant for the Defendant's arrest. (Ex. G at 540-53.)
>
> Detective K.L. Bullard collected a cell phone and case from the scene. He also collected a .38-caliber casing, took photographs of the apartment, and swabbed the door handle for fingerprints. (Ex. G at 556-68.) The DNA samples that Detective Bullard collected at the scene did not yield interpretable results. (Ex. G at 569-80.)

Resp. Ex. 13 at 3-5.

The jury found Petitioner guilty of aggravated assault, a lesser included offense on count one; assault, a lesser included offense on count two; not guilty on count three; guilty on count four; and guilty on count five. Resp. Ex. 15 at 1-7. The trial court sentenced Petitioner to imprisonment for a total term of twenty years. Resp. Ex. 16 at 1-13.

On appeal, Petitioner, with help from appellate counsel, raised the following claim as his sole basis for relief:

> The jury's verdict acquitting Mr. Sheffield of shooting or throwing deadly missiles is inconsistent with the verdict of aggravated assault with discharge of a firearm because the acquittal of shooting into a building negates the element of discharge.

14

Resp. Ex. 7 at 37. The State filed an answer brief. Resp. Ex. 8 at 1–22. The Florida First District Court of Appeal (First DCA) per curiam affirmed Petitioner's conviction and sentence without a written opinion. Resp. Ex. 10 at 1-2.

Petitioner filed a pro se motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). Resp. Ex. 11 at 1-9. The trial court denied the motion. Resp. Ex. 18 at 1-3.

Petitioner also filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising five claims of ineffective assistance of trial counsel. Resp. Ex. 12 at 8–35. The postconviction court denied the Rule 3.850 motion. Resp. Ex. 13 at 1-21. The First DCA per curiam affirmed the postconviction court's Rule 3.850 order. Resp. Ex. 27.

## IV. The Petition

### a. Ground One

Petitioner alleges trial counsel was ineffective for allowing him "to proceed to trial without admitting evidence of Petitioner's need for a psychological evaluation and need for help in mitigation." Petition at 7.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 12 at 10–17. The trial court summarily denied the claim. First, the trial court discussed the issue of Petitioner's competency:

Before the start of trial, the trial court conducted a sworn colloquy with the Defendant about Defense Counsel stipulating to the Defendant's criminal history. The court also asked the Defendant questions about his education, past employment, and mental health history. The Defendant provided a list of his medications and his schedule for taking those medications. He stated unequivocally that he was taking his medications in the manner prescribed and that he fully understood the court's questions. He also affirmed that he would interrupt the court immediately if at any point he did not understand the proceedings. (Ex. G at 366-72.)

At a pre-sentencing hearing on the Defendant's pro se motion to remove Defense Counsel, the trial court inquired about the competency issue:

THE COURT: [Reading from the Defendant's motion] Number 2, he [Defense Counsel] should not have allowed me to go to trial when I informed him of all the psychological medication I am on. Let me hear from the defense on that issue.

MR. BEAUGH [Defense Counsel]: Yes, Your Honor. Throughout the process, before trial I spoke with Mr. Sheffield, he never exhibited any signs that suggested there was a competency issue, he has no competency issues. And as we went through the trial, there was never any suggestion by Mr. Sheffield that -- there was no information at all given to me by Mr. Sheffield that suggested that there would be an issue of either competency or a possible insanity defense.

THE COURT: And based on your conversations with him, you had no concerns about his responses, in your conversations with Mr. Sheffield?

MR. BEAUGH: Yes, Your Honor. There were no times when I thought there might be issues with his defense with his ability to, you know, maintain courtroom

behavior, knowledge of the charges against him, knowledge of, you know, my role as his attorney, the State Attorney's role, the Judge's role, there were no concerns of competency.

In addition, I was never given any information that suggested that at the time of the offense there might have been issues regarding that.

> THE COURT: Okay. Additional record evidence that I inquired of you, Mr. Sheffield, about your educational background and mental health background, you were able to respond to my questions, you were placed under oath and went under oath, you never brought it to the Court's attention. When I asked you questions about your mental health and your medications, you never brought it to the Court's attention that you were on medication that I should have considered, as well as you never brought up any issue about Mr. Beaugh not looking into an insanity defense.
>
> (- - -)
>
> THE COURT: The record evidence is clear, there's no issue of incompetency or insanity based on your [Defense Counsel's] communications with Mr. Sheffield and my communications with Mr. Sheffield, so I'm not going to delay the sentencing any further to get a psychological evaluation.
>
> (Ex. H at 4-5, 7.)

This portion of the record conclusively refutes any allegation that Defense Counsel was ineffective for failing to raise a suggestion of the Defendant's

17

incompetence or develop an insanity defense. See § FLA. R. CRIM. P. 3.210(b) (to move for a mental examination of the defendant's competency, a lawyer must have a good faith, reasonable belief that the defendant is not competent); Thomson v. State, 88 So. 3d 312 (Fla. 4th DCA 2012) (to establish actual prejudice based on defense counsel's failure to move for a competency hearing, a defendant must set forth "clear and convincing circumstances" that "create a real, substantial, and legitimate doubt as to the movant's competency. Teffeteller v. Dugger, 734 So. 2d 1009, 1020 (Fla. 1999) ("Counsel cannot be deemed ineffective for failing to prevail on a meritless issue.").

Resp. Ex. 13 at 7-9.

Next, the trial court discussed the issue of Petitioner's mental health history at sentencing:

The Defendant cannot demonstrate that he would have received a lesser sentence if only Defense Counsel had presented the Defendant's mental health history at his sentencing hearing. First, as shown by the portions of the record cited above, the trial court was already aware of the Defendant's mental health history and schedule of medications because the Defendant furnished that information to the court before trial. (Ex. G at 366-72.) Thus, presenting the information to the trial court at the Defendant's sentencing hearing would not have given the court any new information to consider. Second, the lengthiest of the Defendant's concurrent prison sentences in this case--twenty years in Count One--was mandated by statute. (Ex. B; Ex. C at 4 and 11; Ex. I at 13.) See § 775.087(2)(a), Fla. Stat. (2015) (when a defendant discharges a firearm during the commission of aggravated assault, the court shall sentence the defendant to a mandatory minimum twenty-year prison term). Accordingly, there is no possibility that Defense Counsel could have shortened the duration of

18

> the Defendant's incarceration by presenting mental health evidence at the sentencing hearing. For these reasons, the Court denies Ground One of the Defendant's motion.

Resp. Ex. 13 at 9.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim is neither contrary to, nor an unreasonable application of, *Strickland*, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d).

Even assuming arguendo that the state court's decision was not entitled to deference, the claim fails because it is without merit. Considering the record evidence as described previously, *see supra*, Petitioner fails to demonstrate that trial counsel was ineffective. Before the start of the trial, the trial court conducted a sworn colloquy and asked Petitioner questions about his mental health. In addition, at a pre-sentencing hearing, the trial court inquired about the competency issue. At sentencing, the trial court was already aware of Petitioner's mental health history and schedule of medications. Moreover, as explained by the trial court, because Petitioner's lengthiest sentence was mandated by statute, there was no possibility that his counsel could have

19

shortened the sentence by presenting mental health evidence at the sentencing hearing.   Ground One is denied.

### b. Ground Two

Petitioner alleges trial counsel "was ineffective for misadvising [him] that his testimony was not necessary to support his theory of defense (discharge was accidental)." Petition at 11.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 12 at 18–21. The trial court summarily denied the claim, finding as follows:

> In Ground Two, the Defendant argues that Defense Counsel should have advised him to testify at trial. As set forth above, the trial court conducted an extensive sworn colloquy with the Defendant about his right to testify. (Ex. G at 582-84.) The colloquy shows that the Defendant made a well-informed and voluntary decision about whether to testify. Fully equipped with an understanding of all his rights and options, and after having adequate time to make an informed decision, the Defendant decided against testifying. He may not now undo a decision he voluntarily made while having a full understanding of its consequences. To permit the Defendant to do so would be to ignore his sworn assertions to the trial court. The Defendant may not obtain postconviction relief in that manner. See Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) ("A rule 3 .850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations."); Henry v. State, 920 So. 2d 1245, 1246 (Fla. 5th DCA 2006) (defendants are bound by statements they make under oath). Furthermore, given the State's evidence, there is no reasonable probability that the Defendant--a thirteen-

> time convicted felon even before his trial in this case (Ex. G at 371-72)--would have changed the result of his trial if only he took the witness stand. (Ex. G.) For these reasons, the Court denies Ground Two of the Defendant's motion.

Resp. Ex. 13 at 10.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. The trial court explained to Petitioner his rights and options and informed him that "[y]ou have a constitutional right to remain silent and you do not have to ever become a witness in your own trial; however, you can make the decision to waive that right and become a witness." Resp. Ex. 20 at 231. Petitioner indicated that he understood his rights and options, that he had discussed the matter with his attorney, and that he did not wish to testify. (*Id.* at 231-33.) In addition, Petitioner has failed to demonstrate that, if he had testified, there

21

was a reasonable probability of a different result. Accordingly, Ground Two is denied.

### c. Ground Three

Petitioner alleges trial counsel "failed to investigate, retrieve, and present the recordings of visitation and jail calls, where the alleged victim . . . made exculpatory statements." Petition at 14.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 12 at 22–24. The trial court summarily denied the claim, discussing that a hearing was held on Petitioner's "pre-trial Nelson petition," which included extensive discussion about the jail records at issue in this claim. Resp. Ex. 13 at 10. The trial court also found that the issue was revisited with Petitioner's counsel just prior to the start of trial. (*Id.* at 13.) Finally, the trial court indicated that "at the close of the State's case-in-chief—which included Bradford's testimony— the trial court again inquired about Defense Counsel's pre-trial investigation." (*Id.* at 15.) Consequently, the trial court ruled that

> the record shows that Defense Counsel fully investigated the jail call/visitation issue and did everything possible to obtain the evidence the Defendant wanted. See Turner v. State, 91 So. 3d 916, 918 (Fla. 2d DCA 2012) ("Counsel cannot be ineffective for failing to do something that counsel actually did."). Indeed, the Defendant swore to his satisfaction with Defense Counsel's investigation and representation. See Manning v. State, 305 So. 3d 355, 356-57 (Fla. 1st DCA 2020).

22

> Accordingly, the Court denies Ground Three of the Defendant's motion.

Resp. Ex. 13 at 10.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. The trial court repeatedly addressed this issue. The matter was addressed prior to jury selection (Resp. Ex. 24 at 4-17), and it was revisited prior to when testimony began at trial (Resp. Ex. 20 at 4-6). In addition, Petitioner expressed his satisfaction with counsel's investigation in the colloquy related to his decision not to testify. Resp. Ex. 20 at 232-34. Finally, the trial court considered the issue in denying Petitioner's pre-sentencing motion to discharge counsel. Resp. Ex. 22 at 3-4. Ground Three is denied.

### d. Ground Four

Petitioner alleges trial counsel "failed to file a timely motion for arrest of judgment based on inconsistent verdicts and motion for new trial." Petition at 18.

The record reveals that Petitioner's counsel filed a motion for arrest of judgment, arguing that the jury's not-guilty verdict for shooting within or into a building was inconsistent with the finding that, in committing aggravated assault, Petitioner had discharged a firearm. Resp. Ex. 4 at 2–3. Petitioner's counsel argued that aggravated assault was an "intent crime"; therefore, the jury must have concluded that Petitioner intentionally fired the gun in enhancing the punishment on Count 1, but inconsistently found him not guilty on Count 3. (*Id.*) The trial court found that the motion was untimely. Resp. Ex. 23 at 5.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 12 at 24–26. The trial court summarily denied the claim, Resp. Ex. 13 at 19, finding that

> [b]ecause acquitting the Defendant in Count Three did not negate an element in Count One, the jury's verdicts are not truly inconsistent. See Kelley, 109 So. 3d at 317. And because the jury's verdicts were not inconsistent, the trial court would not have granted a timely motion to arrest judgment. Accordingly, the Court denies Ground Four of the Defendant's motion. Whitted v. State, 992 So. 2d 352, 353 (Fla. 4th DCA 2008) ("Counsel was not ineffective for failing to file a motion sure to be denied.").

(*Id.*)

24

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. Here, the jury found Petitioner guilty of the lesser offense of aggravated assault with a firearm as to Count One and not guilty of Count Three (shooting or throwing deadly missiles). Petitioner argues that the verdict in Count One is inconsistent with Count Three because, in Count One, the jury made a special finding that Petitioner discharged the firearm during the commission of the offense.

The jury was instructed that, to prove aggravated assault, the State was required to prove that Petitioner "intentionally and unlawfully threatened, either by word or act, to do violence to" the victim. Resp. Ex. 5 at 17. However, the same does not apply to the firearm enhancement from Florida's 10-20-Life statute, which provided that:

> 2. Any person who is convicted of a felony or an attempt to commit a felony listed in sub-subparagraphs (a)1.a.-q., regardless of whether the use of a weapon is an element of the felony, and during the course of the commission of the felony such person discharged a "firearm" or "destructive device" as defined in s. 790.001 shall be sentenced to a minimum term of imprisonment of 20 years.

§ 775.087(2)(a)2., Fla. Stat. There was no requirement that the discharge be intentional. See Wiley v. State, 125 So. 3d 235, 238 (Fla. 3d DCA 2013) (section 775.085(2)(a) "does not require an intentional or knowing discharge but merely a 'discharge' that resulted in death or great bodily harm to any person."). Here, based on the evidence, the jury could have found that Petitioner unintentionally discharged his firearm at or into the building while assaulting the victim, even if it was not his conscious decision to do so. Thus, there has been no showing that counsel acted deficiently or that he sustained prejudice. Ground Four is denied.

### e. Ground Five

Petitioner argues "the cumulative effects of trial counsel's errors and omissions constitute ineffective assistance of counsel [because] counsel's cumulative errors were so egregious as to render appointment of counsel meaningless." Petition at 23. This claim was raised in Petitioner's Rule 3.850 motion, and the trial court summarily denied the claim, finding that "because each individual claim of error fails on at least one of these three grounds, the

Defendant's claim of cumulative error does not warrant relief." Resp. Ex. 13 at 19 (citation and quotation omitted).

Since none of Petitioner's individual claims warrants relief, there is nothing to accumulate. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). The alleged errors, neither individually nor cumulatively, deprived Petitioner of a fair trial or due process. Therefore, the Court finds that the state court's decision was neither contrary to, nor an unreasonable application of, federal law and was not based on an unreasonable determination of the facts given the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). Ground Five will be denied.

### f. Ground Six

Petitioner argues that the trial court erred in denying his motion to correct an illegal sentence because its "oral pronouncement conflicts with the written sentence and that the sentence must be imposed pursuant to section 775.082 and not section 775.087, Florida Statutes." Petition at 24.

Here, Petitioner is challenging the review process afforded him in the Rule 3.800 proceeding, and this "ground for relief does not state a claim cognizable on federal habeas. It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state collateral proceedings. This is so, because such a claim represents an attack on a proceeding collateral to the

prisoner's confinement and not the confinement itself." *Garrison v. McCrae*, No. 3:06CV428/RV/EMT, 2009 WL 3055349, at *15 (N.D. Fla. Sept. 21, 2009) (citation omitted); *see also Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ('while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."). Since this claim challenges only the process afforded Petitioner in the state collateral proceedings and does not represent a constitutional challenge to his confinement, Ground Six does not provide a basis for federal habeas relief and is denied.

### g. Ground Seven

Petitioner argues that the trial court erred when it affirmed his conviction and judgment "where the jury's verdict acquitting [him] of shooting or throwing deadly missiles is inconsistent with the verdict of aggravated assault with discharge of a firearm because the acquittal of shooting into a building negates the elements of discharge." Petition at 25. Petitioner raised this claim in his direct appeal, and the First DCA affirmed. Resp. Ex. 7 at 27-31, Resp. Ex. 10 at 1.

Although Petitioner raised this claim on direct appeal, he did not present it in terms of the deprivation of a federal constitutional right. *See* Resp. Ex. 7 at 26–35. Generally, a "federal court may not grant habeas . . . relief to a state

prisoner who has not exhausted his available state remedies." *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). The "exhaustion of state remedies requires that [habeas] petitioners fairly present federal claims to the state courts in order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quotation omitted). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Id.* at 365–66; *accord Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[T]he prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." (quotation omitted)); *Snowden*, 135 F.3d at 735 ("[T]o exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.").

"[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile." *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999). "A habeas petitioner can escape the procedural default doctrine [through either] showing cause for the default and prejudice or establishing a fundamental miscarriage of justice." *Id.* at 1306

(citation and quotation omitted). To overcome procedural default through a fundamental miscarriage of justice, the petitioner must make "a colorable showing of actual innocence." *Id.*

Because Petitioner did not raise this claim on direct appeal in terms of the deprivation of a federal constitutional right, Ground Seven has not been exhausted. Future attempts at exhaustion would be futile, so Ground Seven is procedurally defaulted and is barred absent the application of an exception. Because Petitioner has not demonstrated either cause and prejudice or actual innocence to excuse the default, Ground Seven is procedurally barred from federal habeas review.

Nevertheless, even assuming arguendo that the federal nature of this Ground was exhausted and is properly before the Court, Petitioner is still not entitled to the relief he seeks because it fails on the merits. As discussed with regard to Ground Four, the verdicts in this case were not inconsistent. Thus, Ground Seven is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice.**

2.    The Clerk of Court shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3. If Petitioner appeals this dismissal, the Court denies a certificate of appealability.[4] Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this ___ day of March, 2026.

HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

c:
Elliott Demond Sheffield, # F122773
Counsel of record

---

[4] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.